| | |
|---|---|
| EMIR FETAI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br> vs.<br><br>STATE COLLECTION SERVICE INC.,<br><br>    Defendant. | Case No.: 18-cv-262<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats.

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Emir Fetai is an individual who resides in the Eastern District of Wisconsin (Kenosha County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff debts allegedly incurred for personal, family or household purposes, namely medical debts.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from a consumer transaction that included agreements to defer payment.

6. Defendant State Collection Service, Inc. ("SCS") is a debt collection agency with its principal offices at 2509 South Stoughton Road, Madison, Wisconsin 53716.

7. SCS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. SCS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. SCS is licensed as a "Collection Agency" pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

10. SCS is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

11. Plaintiff obtained medical services from "KENOSHA EMERGENCY PHYSICIANS LLC" ("KEP") on or about July 18, 2017.

12. The alleged debt incurred as a result of these services was a medical debt and incurred for personal, household, and family purposes.

13. Plaintiff was not required to pay for the medical services at the time services were rendered. Instead, the creditor, or a billing agent, mailed a bill several days or weeks after the dates of service. Thus, payment was deferred by agreement. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to

defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred . . . in exchange for medical services . . . . Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

14. On or about November 16, 2017, SCS mailed a debt collection letter to Plaintiff regarding this alleged debt, allegedly owed to KEP. A copy of this letter is attached to this complaint as Exhibit A.

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter used by SCS to attempt to collect alleged debts.

17. Upon information and belief, Exhibit A is the first written communication SCS mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

18. Exhibit A contains the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

**\*\*IMPORTANT CONSUMER NOTICE\*\***
Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will: Obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

19. Exhibit A also contains the following:

| Creditor | Client Acct # | Service Date | Account Balance |
|---|---|---|---|
| KENOSHA EMERGENCY PHYSICIANS LLC | ▇▇▇▇1140 | 07/18/17 | $390.00 |
| | | Total Amount Due: | $ 390.00 |

3

Exhibit A.

20. Exhibit A also contains the following:



Exhibit A.

21. Exhibit A states that SCS is collecting a debt owed to KEP in the amount of $390.00, and that this debt has been assigned an SCS account number ending in 1709.

22. On or about December 30, 2017, SCS mailed another debt collection letter to Plaintiff regarding this same alleged debt, allegedly owed to KEP. A copy of this letter is attached to this complaint as Exhibit B.

23. Upon information and belief, Exhibit B is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer

24. Upon information and belief, Exhibit B is a form debt collection letter used by SCS to attempt to collect alleged debts.

25. Exhibit B contains the following:

| Creditors: | Amount Owed: |
|---|---|
| KENOSHA EMERGENCY PHYSICIANS LLC | $ 391.44 |
| Total Amount Due: | $ 391.44 |

Exhibit B.

26. Exhibit B also contains the following:



Exhibit B.

4

27. Exhibit B states that SCS is collecting a debt owed to KEP in the amount of $391.44, and that this debt has been assigned an SCS account number ending in 1709.

28. Exhibits A and B are collecting the same debt.

29. Between November 16, 2017, when Exhibit A was mailed, and December 30, 2017, when Exhibit B was mailed, the debt referenced in Exhibits A and B increased from $390.00 to $391.44.

30. Exhibits A and B refer to the same medical services. The account balances stated on each letter are different because of the addition of interest, and not a consequence of any additional services that KEP may have provided.

31. Upon information and belief, the debt referenced in Exhibits A and B is accruing interest at about 4.5% annually.

32. Neither Exhibit A nor Exhibit B states that the debt is accruing interest, and Exhibit B does not itemize the additional interest.

33. From the face of Exhibits A and B, the unsophisticated consumer would have no idea why the amount of the debt had changed.

34. From the face of Exhibits A and B, the unsophisticated consumer would be unable to tell that interest on the debt was accruing, and that the amount of the debt on the day the consumer received Exhibit A or Exhibit B would be different from the amount stated on Exhibit A or Exhibit B.

35. When the amount of the debt varies day to day, the debt collector should avoid confusion by including explanatory language in the letter. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) ("As of the date of this letter, you owe $ [the exact amount due]. Because of interest, late charges, and other charges

5

that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-[phone number]."); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 949 (7th Cir. 2004); *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 565-66 (7th Cir. 2004).

36. No such explanatory language was used in <u>Exhibits A and B</u>.

37. In *Chuway v. Nat'l Action Fin. Servs., Inc.*, 362 F.3d 944, 949 (7th Cir. 2004), the Seventh Circuit made clear that the debt collector must use the safe harbor language in *Miller* or equivalent language, in cases where the debt collector is attempting to collect the listed balance plus the interest running on it or other charges. *See also Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72 (2d Cir. 2016) (a collection notice violated 15 U.S.C. § 1692e by stating the "current balance" without providing notice that the amount is increasing due to accruing interest or other charges.); *Boucher v. Fin. Sys. of Green Bay*, No. 17-2308, 2018 U.S. App. LEXIS 1094 **12-14 (7th Cir. Jan. 17, 2018) (*Miller*, including its "accuracy requirement," applies to claims brought under 15 U.S.C. § 1692e).

38. A court in this district recently held in a virtually identical scenario that when a debt collector is, in fact, collecting interest, the collector must use the *Miller* safe harbor or equivalent language, or risk misleading and confusing the unsophisticated consumer. *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 210895 at *17-20 (E.D. Wis. Dec. 22, 2017) ("State Collection's letter undeniably does not contain any form of Miller's safe harbor language. Because State Collection's letter failed to inform the Spuhlers that interest was running on the amount owed, I find there is a triable issue of fact as to whether the collection

6

Case 2:18-cv-00262-WED  Filed 02/20/18  Page 6 of 16  Document 1

letter is confusing or unclear on its face."); *see also Synder v. Gordon*, 2012 U.S. Dist. LEXIS 120659, at *8-9 (W.D. Wash. Aug. 24, 2012); *Michaelek v. ARS Nat'l Sys., Inc.*, 2011 U.S. Dist. LEXIS 142976, at *4 (M.D. Penn. Dec. 13, 2011); *Dragon v. I.C. Sys.*, 483 F. Supp. 2d 198, 202-03 (D. Conn. 2007); *Lukawski v. Client Servs., Inc.*, 2013 U.S. Dist. LEXIS 124075, at *10-14 (M.D. Penn. Aug. 29, 2013).

39. SCS' failure to include explanatory safe harbor language in Exhibits A and B is material because the unsophisticated consumer may pay the amount listed on Exhibit A or Exhibit B, but the payment would not actually resolve the debt. The unsophisticated consumer would have no way of knowing if the debt was resolved because Exhibits A and B do not explain that the debt SCS is collecting is subject to the accrual of interest.

40. SCS' failure to include explanatory safe harbor language in Exhibits A and B is also material because whether the account is bearing interest would undoubtedly be a factor in the unsophisticated consumer's prioritization of the debt. *See Martin v. Trott Law, P.C.*, 265 F. Supp. 3d 731, 748 (E.D. Mich. July 12, 2017) ("An inherent danger posed by harassing or deceptive collection practices is that consumers will be pressed into making uninformed decisions about debt prioritization, which affects their daily lives.") (quoting *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1097 (6th Cir. 2015), *rev'd on other grounds*, *Sheriff v. Gillie*, 136 S. Ct. 1594 (2016)); *Lox v. CDA, Ltd.*, 689 F.3d 818, 827 (7th Cir. 2012) ("Whether or not this fact would have led Lox to alter his course of action, it would have undoubtedly been a factor in his decision-making process[.]"). The consumer may prioritize debts that are accruing interest over debts that are not.

41. Further, even assuming the creditor previously disclosed that the account would bear interest, the unsophisticated consumer is not expected to reference the creditor's documents

7

to ameliorate any potential confusion. *Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) ("an unsophisticated consumer may have lost the bill and forgotten the amount of the debt completely"); *Lukawski*, 2013 U.S. Dist. LEXIS 124075, at *10, 11 (rejecting an argument that interest had been disclosed in a letter sent six weeks prior to the offending communication) ("the letter in question is deceptive in spite of the prior letter with the interest disclosure. . . . These arguments, requesting that the letters be read together to place notice on Michalek of increasing balances, were made and rejected by the Court.") (citing *Michalek*, 2011 U.S. Dist. LEXIS 142976, at *18-19).

42. Plaintiff was confused and misled by <u>Exhibits A and B</u>.

43. The unsophisticated consumer would be confused and misled by <u>Exhibits A and B</u>.

### *The FDCPA*

44. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Pogorzelski v. Patenaude & Felix APC*, No. 16-C-1330, 2017 U.S. Dist. LEXIS 89678 *9 (E.D. Wis. June 12, 2017) ("A plaintiff who receives misinformation from a debt collector has suffered the type of injury the FDCPA was intended to protect against."); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a

8

Case 2:18-cv-00262-WED | Filed 02/20/18 | Page 8 of 16 | Document 1

primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,'"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes

creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

45. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

46. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

47. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

48. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

50. 15 U.S.C. § 1692g states, in part:

a) **Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

10

(1) the amount of the debt;

51. The Seventh Circuit has held that initial collection letters must clearly state the amount of the debt. *Miller*, 214 F.3d at 876; *Chuway*, 362 F.3d at 949.

52. Failure to disclose that the account was accruing interest is ambiguous as to the amount and character of the debt. *See Spuhler*, 2017 U.S. Dist. LEXIS 210895, at *19-20 (triable issue of fact as to whether the collection letter is misleading under 15 U.S.C. §§ 1692e and 1692f).

53. Because there is a triable issue as to whether failure to disclose that the account was accruing interest is misleading as to the amount of the debt, it is necessarily confusing and ambiguous, and therefore violates 15 U.S.C. § 1692g(a)(1) as a matter of law. *See Pantoja v. Portfolio Recovery Assocs., LLC*, 852 F.3d 679, 687 (7th Cir. 2017) ("When assessing whether a dunning letter violates the FDCPA, whether an unsophisticated consumer would find certain debt-collection language misleading is often a question of fact. . . . Where the FDCPA requires clarity, however, ambiguity itself can prove a violation.").

### *The WCA*

54. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

55. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

56. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

57. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

58. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

59. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

60. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

61. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

62. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

63. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

64. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

**COUNT I – FDCPA**

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. The "Account Balance" stated in <u>Exhibit A</u> is confusing and misleading.

67. The "Amount Owed" stated in <u>Exhibit B</u> is confusing and misleading.

68. The amount of the debt varies day to day, and has increased over time, due to SCS' addition of interest, but no *Miller* safe harbor language is provided to inform the unsophisticated consumer of that fact or how to pay the correct amount.

69. The unsophisticated consumer would be confused and misled as to the amount and character of the debt.

13

Case 2:18-cv-00262-WED    Filed 02/20/18    Page 13 of 16    Document 1

70. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692g(a)(1).

## COUNT II – WCA

71. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

72. Defendant is licensed as a Collection Agency pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

73. The "Account Balance" stated in Exhibit A is confusing and misleading.

74. The "Amount Owed" stated in Exhibit B is confusing and misleading.

75. The amount of the debt varies day to day, and has increased over time, due to SCS' addition of interest, but no *Miller* safe harbor language is provided to inform the unsophisticated consumer of that fact or how to pay the correct amount.

76. The unsophisticated consumer would be confused and misled as to the amount and character of the debt.

77. Defendant violated the FDCPA.

78. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

79. Plaintiff brings this action on behalf of a Class consisting of:

(a) all natural persons in the State of Wisconsin (b) who were sent a series of collection letters by Defendant in the form of Exhibits A and B to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) in which the balance stated in the letter in the form of Exhibit B is greater than the balance stated in the letter in the form of Exhibit A because of interest, (e) and Exhibit A does not disclose that the account was bearing interest, where (f) the final letter sent in the series was mailed between February 20, 2017 and February 20, 2018, inclusive, (g) and neither letter was not returned by the postal service.

80. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

81. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA and/or the WCA.

82. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

83. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

84. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

85. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

(e) such other or further relief as the Court deems proper.

Dated: February 20, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ John Blythin
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com